611 So.2d 957 (1992)
Charlotte McCoy, Renee McCoy and Robert Chris McCoy
v.
Henry Elroy McCoy, Pauline McCoy Gatlin Pitts, John H. Gatlin, Tommy Gatlin and Josephine McCoy Gatlin.
No. 90-CA-0213.
Supreme Court of Mississippi.
December 31, 1992.
William F. Blair, Lou S. Jordan, Ralph B. Germany, Jr., Ott Purdy & Scott, Jackson, for appellants.
Charles M. Leggett, Waynesboro, Gilford F. Dabbs, III, Quitman, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
BANKS, Justice, for the Court:
This appeal concerns a chancellor's refusal to reform three deeds. The appellants contend, as they did below, that the deeds do not reflect the true intent of the grantors. We are unable to find the chancellor manifestly in error and we, therefore, affirm.

I.
Charlotte McCoy, and her children, Renee and Robert McCoy (hereinafter appellants) filed a petition with the Wayne County Chancery Court on March 28, 1989, seeking a reformation of three deeds. The deeds involve surface and mineral rights on a tract of land located on Lots 4 and 5, Section 20, Township 10, County of Wayne. There is no dispute that this tract was at one time owned by H.E. McCoy, J.E. McCoy and R.D. McCoy (hereinafter the McCoy brothers) and was colloquially referred to as "the Level." It is also undisputed that "the Level" is a portion of an original tract that the McCoy brothers owned as tenants in common. In support of their petition, the appellants alleged the McCoy brothers intended to divide surface and mineral rights on the original tract equally, with each brother claiming 20 acres entirely.[1] While the deeds in question make no mention of acreage, two specifically noted the purpose of the conveyance was to effectuate a previous mutual division of property among the brothers. In short, the appellants claim the deeds are ambiguous, do not accurately reflect the intent of the grantors and should therefore be reformed.
*958 The appellees concede the McCoy brothers intended to divide the original tract among themselves, but suggest that the evidence is insufficient to dictate a conclusion that the division was intended to be equal as to acreage and mineral rights. In particular, the appellees contend that R.D. McCoy and H.E. McCoy may fairly be deemed to have intended the result obtained, an unequal division of the Level, with R.D. securing surface rights while H.E. assumed mineral rights on the majority of the Level.
The appellants are the heirs at law of R.D. McCoy.
The appellees are the heirs at law of H.E. McCoy.
At the time of this action, Weeks Exploration Co., a foreign corporation doing business in Mississippi, held oil and gas leases on the Level from all parties to this lawsuit. While preparing a title opinion, an agent for Weeks noted a discrepancy between the deeds on record and how the lessors had informed him they were intending to divide profits. This action was instituted after appellants learned of his findings.

II.
The McCoy family has been associated with the disputed land for almost a century. F.E. McCoy, father of the McCoy brothers, first occupied in 1910 a 100-acre parcel, which encompassed the disputed land. The parties do not dispute that F.E. McCoy paid taxes on the parcel from 1910 to 1917. F.E., however, did not have record title to the parcel.
By warranty deed filed in the Wayne County Chancery Court on February 2, 1925, the McCoy brothers acquired record title to about 60 acres of land. This deed actually transferred 100 acres to the McCoy brothers  the same 100 acres that F.E. McCoy occupied and paid taxes on. However, the McCoy brothers could not claim all 100 acres, as two of the brothers previously deeded a section consisting of about 40 acres to a non-related transferee.[2] The land they obtained was described as the West one-half of Lot 10 and that portion of Lots 4 and 5 east of the Eucatta and Nicholson Creeks.[3]
On January 15, 1927, H.E. McCoy and R.D. McCoy conveyed by warranty deed the west half of Lot 10 to J.E. McCoy. The deed stated this tract (hereinafter "South Tract") contained twenty acres, more or less. Following this conveyance, the McCoy brothers each held an equal interest in the Level, but J.E. McCoy held an exclusive interest in South Tract.
H.E. McCoy and J.E. McCoy conveyed all of their interests in the western one-half of lots 4 and 5, east of the Eucutta and Nicholson Creeks, with all improvements situated thereon to R.D. McCoy on September 9, 1942, by a warranty deed. This conveyance is the first of the three conveyances which the appellants seek to reform.
Following the 1942 conveyance, only R.D. McCoy held an interest in the western half of lots 4 and 5. However, all the McCoy brothers maintained interests in the eastern half of the Level. The first pivotal question presented in this appeal, as will be seen in greater detail below, is: what constituted "half" of the Level.
On January 8, 1945, H.E. McCoy conveyed his surface rights to the east half of the Level to R.D. McCoy by warranty deed. As a result of this deed, R.D. had a two-thirds interest in the surface rights of the *959 east half and J.E. maintained his initial one-third interest.
J.E. McCoy died in 1948. H.E. McCoy died suddenly on December 3, 1953.
At trial, there was no dispute among the parties that three intra-family deeds filed with the Wayne County Chancery Clerk on December 12, 1953, were executed with the intent to actualize the property division of the Level in accordance with the intent of the McCoy brothers. This brings the second and final pivotal question of this appeal to the surface: what was the intent of the McCoy brothers regarding a division of the Level?
The three deeds filed on December 12, 1953, tied up any loose strings remaining regarding the division of the Level. The heirs of J.E. McCoy conveyed to the heirs of H.E. McCoy all their interest in the east half of the Level by warranty deed. The heirs of J.E. McCoy then conveyed their surface interest in the east half of the Level to R.D. McCoy, explicitly retaining the mineral rights in the Level. The construction of these two deeds has been challenged by the appellants. Finally, R.D. McCoy conveyed to the heirs of H.E. McCoy his interest in all the mineral rights in the east half of the Level by warranty deed.
In light of the December 12, 1953, deeds, it is clear that the heirs of H.E. McCoy held exclusive mineral interests in the east half of the Level. R.D. McCoy held exclusive surface rights over the entirety of the Level, and mineral rights on the west half of the Level. The heirs of J.E. McCoy conveyed any interests they retained in the Level to either R.D. McCoy or the heirs of H.E. McCoy. The issue to be decided, therefore, is whether the deeds conveyed that portion of the west one-half of lots 4 and 5 which lies west of the creeks or whether the intent was to convey one-half of the property area, the west half, of all of lots 4 and 5 which lies west of the creek (20 acres of the land on the western half).
A hearing was held on pleadings filed by the parties in Wayne County Chancery Court on October 31 and November 1, 1989. At this hearing, the appellants claimed the McCoy brothers intended to divide the Level between R.D. McCoy and H.E. McCoy in equal portions (20 acres to each brother).[4] In support of this contention, the appellants called the heirs of J.E. McCoy as witnesses.
The heirs of J.E. McCoy, who had no financial interest in the litigation, testified they would not have signed the December 12, 1953, deeds if they knew that the effect of the deeds would have divided mineral rights in the Level between R.D. McCoy and the heirs of H.E. McCoy unequally. None of these witnesses, however, testified they ever had a conversation with any of the McCoy brothers concerning the intent of the brothers to divide interests in the Level. Additionally, none of the appellants' witnesses could testify they had even overheard the McCoy brothers discussing their intentions regarding the Level.[5] Rather, witnesses for the appellants testified that there was a tacit understanding among members of the McCoy family that the McCoy brothers intended to divide the Level equally between R.D. McCoy and H.E. McCoy. The most explicit statement attributed to a brother by a witness for the appellant was that attributed to H.E., prior *960 to the 1945 deed, to the effect that he intended to give R.D. the first opportunity to acquire his "half". No testimony was adduced, however, regarding where the McCoy brothers believed the dividing line on the Level existed.
Henry Elroy McCoy, Jr., an appellee in this action, testified that he had a conversation with R.D. McCoy regarding the division of the Level. Insofar as Henry Elroy actually spoke with one of the McCoy brothers concerning the disposition of the Level, his testimony is momentous.
Henry Elroy testified he approached R.D. McCoy after the 1953 deeds had been filed and told R.D. that the surface and mineral division of interests on the Level was unequal. According to Henry Elroy, R.D. McCoy stated the division of interests as recorded in the 1953 was appropriate and he would not make any modifications to those deeds.[6] In addition, Henry Elroy testified a stob was situated on the mid-40 line and that his father had built a barn several feet to the east of the stob.
On cross-examination, the appellants questioned why Henry Elroy did not tell his cousins that mineral interests in the Level were unequally divided and, if the interests were unequal, why Henry Elroy had, theretofore, allowed the mineral profits to be divided equally. Henry Elroy responded that the unequal division was a matter of public record (as Henry Elroy contended the deeds in question divided the Level unequally) but that he nonetheless divided the profits equally as he did not believe it was proper to "short" his cousins.
In his findings of fact, Judge Clark determined there was no credible evidence propounded by the appellant that the McCoy brothers ever intended to divide the original tract equally or that the deeds in questions were ambiguous. Finding no ambiguity and no evidence of mutual mistake, the trial court denied the appellants' petition to reform the deeds. While the parties concede that the deeds are unambiguous (Appellants' brief at 17; Appellees' brief at 9), the appellant urges on appeal that the trial court committed reversible error in failing to find mutual mistake in the deeds in question.

III.
It is axiomatic that reasonable doubt may arise from evidence or, conversely, a lack of evidence. In addition, a chancellor's findings of fact are unassailable on appeal unless those findings are manifestly wrong. Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss. 1985); Cotton v. McConnell, 435 So.2d 683 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). This Court has held a trial court's finding of fact is manifestly wrong when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." UHS-Qualicare v. Gulf Coast Com. Hosp., 525 So.2d 746, 755 (Miss. 1987).
The appellants alleged below, and have raised on appeal here, that the September 19, 1942, deed from H.E. and J.E. McCoy to R.D. McCoy for the west half of *961 the Level, as well as the December 9, 1953, deeds from the heirs of J.E. McCoy to R.D. McCoy and the heirs of H.E. McCoy were products of a mutual mistake among the parties.
In an action to reform a deed based on a mistake theory, the petitioner must demonstrate a mutual mistake among the parties or a unilateral mistake in combination with fraud or inequitable conduct on the part of the benefitting party. Perrien v. Mapp, 374 So.2d 794, 796 (Miss. 1979). The petitioner must prove the mutual mistake occurred between the parties beyond a reasonable doubt. Webb v. Brown, 404 So.2d 1029, 1032 (Miss. 1981); Sunnybrook Children's Home, Inc. v. Dahlem, 265 So.2d 921, 925 (Miss. 1972).[7] In the trial court's findings of fact, Judge Clark wrote:
Both Ruel [R.D.] and Preacher [H.E.] are now dead. No witness ever heard these two discuss with each other their intent. The best evidence, other than possession, of their intent is the written documents signed by them, the deeds in question. The deeds are not ambiguous and the same descriptions are consistently used, indicating to the Court a knowledge by the parties of the effect of the deeds.
If the appellants were unable to provide sufficient evidence of the McCoy brothers intent regarding the division of the Level, the trial court was left only to consider whether the deeds in question were ambiguous enough to mask what could have been the real intent of the parties and therefore eligible for reformation. Searcy v. Tomlinson Interests, Inc., 358 So.2d 373, 374 (Miss. 1978). Yet, as stated above and as repeated by counsel for the appellants at the November 30, 1992, oral argument of this case, the appellants do not allege any of the deeds in question contain ambiguous language. As such, the trial court was precluded from reforming the deeds on the ground that the deeds suffered from ambiguous language. Webb v. Brown, 404 So.2d 1029, 1031-32 (Miss. 1981); Cummins v. Steele, 54 Miss. 647, 647 (1877).

IV.
Simply put, the appellants failed to prove to the satisfaction of the chancellor beyond a reasonable doubt that the deeds in question were a product of mutual mistake reformation. We cannot conclude the trial court's findings of fact were manifestly wrong. We affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents.
DAN M. LEE, P.J., and ROBERTS, J., not participating.
NOTES
[1] The appellants proceeded on the presumption that the McCoy brothers believed the tract was comprised of 60 acres.
[2] H.E. McCoy and J.E. McCoy transferred this tract to Allen Graham by warranty deed filed in the Wayne County Chancery Court on March 17, 1914. The tract covered the portion of lots 4 and 5, Section 20, Township 10, lying north and northwest of the Eucutta and Nickerson Creeks in the County of Wayne. The equitable doctrine of estoppel by deed would prohibit the brothers from claiming title to this tract under the 1925 deed. Perkins v. Kerby, 308 So.2d 914, 916-17 (Miss. 1975). Any interest R.D. McCoy maintained in the tract was abandoned by a quitclaim deed in which he named Fred Graham, an heir to Allen Graham, as grantee. This quitclaim was filed at the Wayne County Chancery Court on April 1, 1957.
[3] Because of an irregular surface area caused by numerous streams, the land records in this area show a division by lots consisting of roughly 40 acres each. A lot then is the approximate equivalent of a quarter quarter section.
[4] This division would have divided the parcel deeded to the three McCoy brothers in the February 17, 1925, deed equally. R.D. McCoy and H.E. McCoy would each receive 20 acres of the Level in light of J.E. McCoy receiving sole interest in South Tract (a 20 acre tract) in 1927.
[5] Charlotte McCoy, an appellant in this action, testified during direct examination she overheard R.D. McCoy speak about how he and H.E. McCoy intended to divide the Level, but could not testify when she heard these statements. On cross-examination, Charlotte McCoy qualified her previous testimony, stating she had heard R.D. McCoy discuss division of the Level "[a]ll my life, all the years I was married in the family." (R. at 130). Also, Charlotte McCoy never testified that she overheard R.D. McCoy state the McCoy brothers intended to divide the Level equally. Instead, she testified: "He [R.D. McCoy] said that [the Level] contained 40 acres and the east one-half of the forty belong to H.E. McCoy and that the west one-half of the forty belonged to him." (R. at 128) Once again, however, witnesses for the appellants were unable to shed any light on what the McCoy brothers meant by "half" of the Level.
[6] Henry Elroy testified as follows:

When I went to my Uncle Ruel [R.D. McCoy], I asked him, I said: Uncle Ruel, I said, I've come to talk to you about the land up there. I said: You know my dad [H.E. McCoy] sold his half interest in the surface. I said: There is no question about it, y'all agreed on it; he made you a deed and you paid him for it. I said: You know my dad reserved the minerals on there to his part of the land. I said: What I'm coming to see you about is, did you intend for the minerals to be equal? What was your intentions on that, because that's the only interest we have in it, would be a mineral interest, and I'd like to know what your intentions were concerning the mineral rights.
Q. Did he respond to that?
A. Yes, sir, he did respond.
Q. What did he say?
A. He said: I've got it fixed like I want it. I said: Uncle Ruel, the minerals are not equal. What do you have to say about that? He said: Young man, you must not hear what I said, I told you that me and Cille [R.D. McCoy's wife] had this fixed like we want it. He said: As far as I'm concerned it can forever more be that way.
Q. Alright. Did he indicate to you anything about not wanting to sign no more papers?
A. He said he wouldn't. He said: We signed papers until we turned blue in the face. (R. at 240-41).
[7] We embrace this opportunity to resolve a discrepancy existing in Mississippi case law regarding the proper burden of proof in cases involving reformation of deeds. We have said that the claim of mutual mistake in an action to reform a deed must be proven by clear and convincing evidence. Mixon v. Nobles, 277 So.2d 620, 621 (Miss. 1973); Abney v. Lewis, 213 Miss. 105, 115-16, 56 So.2d 48, 51 (1952); Allison v. Allison, 203 Miss. 15, 19-20, 33 So.2d 289, 290 (1948). However, an abundance of case law exists indicating the proper burden of proof in mutual mistake cases involving a reformation of a deed is the beyond a reasonable doubt standard. Webb, supra; Perrien, supra; Dahlem, supra; Turner v. Turner, 241 Miss. 444, 454, 130 So.2d 871, 875 (Miss. 1961); American Alliance Ins. Co. v. Alford, 229 Miss. 855, 861, 92 So.2d 191, 193 (1957); Brown v. King, 214 Miss. 437, 439, 58 So.2d 922, 923 (1952); Frierson v. Sheppard, 201 Miss. 603, 606, 29 So.2d 726, 727 (1947). This discrepancy was first noted by this Court over twenty years ago, Dahlem, supra, but was never resolved. In light of the fact that case authority supporting the beyond a reasonable doubt burden is more contemporary and more prevalent than reformation cases which established otherwise, we hereby conclude the appropriate burden of proof in deed reformation cases wherein a party pleads mutual mistake is beyond a reasonable doubt.