KING, P.J.,
for the Court.
¶ 1. Bank of Mississippi, now known as BancorpSouth, filed suit in the Chancery Court of Clay County seeking reformation of the legal description of property used as *641 collateral for a bank loan by the appellants, David and Elena Whitefoot, formerly known as David and Linda Jones. The court ruled in favor of the Bank and directed that a survey be made to create a legal description comporting with the intent of the parties. Final judgment was entered on August 29, 2001, approving the legal description derived from the survey, reforming all deeds of trust and authorizing the Bank to enforce its deeds of trust according to their terms, as reformed.
¶ 2. The Whitefoots filed an appeal after the chancery court denied their Rule 59 motion for relief from judgment.
¶ 3. The Whitefoots raise the following assignments of error:
1. Whether the court erred because its findings of fact and conclusions of law are manifestly wrong, and not supported by the evidence in the case.
2. Whether the court erred because it used the wrong standard of review in judging the case.
3. Whether the court erred because it allowed the Bank to argue the case on a different set of facts, and argue a different standard of review from that claimed in the initial complaint.
4. Whether the court erred by its order to reform the Whitefoots’ thirty two acre tract against an unnecessary party without interest, instead of against real and necessary parties with interest, and erred by not including all necessary parties on both three and thirty two acre tracts reformations.
5. Whether the court erred by not basing the case on the intent revealed by the evidence in the 1997 renewal, instead of basing the case on past intent.
6. Whether the court erred by not considering the 10 year statute of limitations to reform a deed because of a parties’ own mistake, negligence, or oversight, according to 15-1-7, of the Mississippi Code of 1972.
7.Whether the court erred by entering judgment against, or one that would affect the Whitefoots’ thirty two acre homestead, because the thirty two acres was declared a homestead years before judgment entered.
This Court finds no error and affirms.
FACTS
¶ 4. The Whitefoots, formerly the Joneses, own thirty-five acres in Clay County, Mississippi. The subject of this appeal is a three acre tract that was carved out of the total acreage by the Farmers Home Administration in 1981. The FHA financed the construction of a house in 1981 which was supposed to be on the three acres, but which in reality was on the remaining thirty-two acres.
¶ 5. On February 5,1988, the Whitefoots transferred a deed of trust and security agreement on the three acres to the Bank of Mississippi by way of a thirty day promissory note. When the Bank accepted the three acre tract as security from the FHA in 1988, it was thought by the FHA, Bank and the Whitefoots to cover the White-foots’ house. The 1988 security agreement listed the house and three acres as collateral.
¶ 6. The note with deed of trust and security agreement was renewed in 1990 with the house and three acres again listed as collateral. David Whitefoot contends that he notified the bank president that the house did not appear to be on the three acre tract and that the Bank declined his offer to survey the property, but renewed the note as it was. In 1992 the note was again renewed with the house and three acres listed as collateral on the security agreement.
¶ 7. In 1992, prior to the renewal, the Whitefoots declared Chapter 13 bankrupt *642 cy and listed the three acres and house as being mortgaged to the Bank. The White-foots indicated that they knew their house was not on the three acres when they discovered the homestead records listed the house as being on the thirty-two acres and had listed it that way since 1982. In the bankruptcy action, the Whitefoots did not file against the Bank, but rather agreed to keep all loans with the Bank. They did however file against EB, Inc., the mortgage holder on the thirty-two acres.
¶ 8. While the bankruptcy was in progress, EB, Inc. sold its interest to another mortgage holder, which in turn sold its interest to Greystone Mortgage Co. Grey-stone was the mortgage holder when the Whitefoots completed their Chapter 13 plan in August 1997. As a result of completing their Chapter 13 plan, the White-foots own the thirty-two acres free of all liens since these were paid off in the bankruptcy plan.
¶ 9. In its complaint, the Bank listed EB, Inc. as a party because EB, Inc. was still shown as the record lienholder on the un-cancelled deed of trust on the thirty-two acre tract. EB, Inc. was released as a party by agreement with the Bank and order of the chancery court.
¶ 10. In 1995, the Whitefoots refinanced the note on the three acre deed of trust and security agreement with the Bank. Again, the Bank listed the house and three acres as collateral on the security agreement. According to the Whitefoots, the bank president promised that he would have a survey done at the completion of the Chapter 13. In 1996, a new bank president was appointed.
¶ 11. On June 26, 1997, the Whitefoots’ note on the three acres came up for renewal again. The Bank and the Whitefoots renewed the note by renewal deed of trust and security agreement. This time the 1997 renewal security agreement did not list the Whitefoots’ house as collateral. The Bank would later claim that the 1997 security agreement did not have to list the house as collateral in order for the Bank to have a security interest. The Whitefoots’ argument on appeal is premised on the Bank’s failure to list the house in the 1997 renewal. The Whitefoots never made any payments on the 1997 note and now contend that they should own their house outright, with the only collateral on the loan being the three acres.
¶ 12. The Whitefoots and the Bank agreed that it was their intent that the house and three acres were to be collateral for the original loan and the subsequent renewals in 1990, 1992, and 1995. The dispute is whether the 1997 renewal was to include the house. The Whitefoots argue that the Bank was fully aware that the property description in the deed of trust did not include the property on which the house was located and that the Bank was willing to accept the three acres alone as collateral because there was insufficient time to get a new survey and description. At the time of trial the amount owed by the Whitefoots and secured by the deeds of trust was $46,163.57, and the value of the three acres alone was approximately $3,000.
DISCUSSION
1. Whether the court erred because its findings of fact and conclusions of law are manifestly wrong, and not supported by the evidence in the case.
¶ 13. An appellate court will not disturb a chancellor’s findings of fact unless the chancellor abused his discretion, was manifestly wrong, was clearly erroneous or applied an erroneous legal standard. Turpin v. Turpin, 699 So.2d 560, 564 (¶ 14)(Miss.1997); Wilson v. Wilson, 810 So.2d 615 (Miss.Ct.App.2002).
*643 ¶ 14. The Whitefoots’ argument is that the Bank became aware that the house was outside the legal description prior to the renewal of the loan in 1997, and therefore waived its right to claim a lien on the house when it knowingly used the erroneous description in the last renewal deed of trust.
¶ 15. As argued by the Bank, the chancellor gave detailed findings in support of his conclusions. The chancellor was fully satisfied that, notwithstanding the erroneous description in 1997, that what the parties intended was clear beyond a reasonable doubt. The chancellor characterized as “unbelievable” the White-foots’ evidence that the Bank intended to abandon its claim on the house. The chancellor was fully satisfied with the explanation that no other description was available and that the exigent circumstances surrounding the loan made it necessary to use the erroneous description. The chancellor specifically found that looking to the entirety of the transaction that the parties’ intent was to renew, extend and continue the lending relationship which began in 1988 and surrounded all the prior transactions. Even David Whitefoot in his testimony agreed that the Bank had a lien on the house at all times prior to the 1997 renewal. Thus, the chancellor was correct in finding that if the 1995 deed of trust covered the house, the 1997 deed of trust did as well.
¶ 16. Under the existing standard of review, this Court cannot reweigh the evidence to reach a different conclusion. In this case, the chancellor was in the best position to listen to the witnesses, observe their demeanor and determine their credibility. Rogers v. Morin, 791 So.2d 815, 826 (¶ 39) (Miss.2001); Carter v. Carter, 735 So.2d 1109 (Miss.Ct.App.1999).
¶ 17. We find no error in the chancellor’s findings.
2. Whether the court erred because it used the wrong standard of review in judging the case.
¶ 18. The Whitefoots argue that the court erred when it decided the case on Mississippi case law that says that a mere change in the form of the evidence of the debt cannot operate to discharge a hen. They contend that the court should have applied case law based on mutual mistake to reform a deed or contract. Their position is that the Bank never had an actual lien on the house, only an intention to have a hen. The Whitefoots also argue that mutual mistake could be the only basis for reformation of the deed of trust and that there was no mutual mistake in the 1997 deed of trust.
¶ 19. As noted by the Bank, an action to reform a deed depends on the existence of a deed which on its face does not reflect what the parties intended. The lower court found that the Bank did have a hen on the property in question as a matter of equity by virtue of the intentions of the parties repeated over several transactions. There is no dispute that this mutual mistake continued through 1995. As stated in Webb v. Brown, 404 So.2d 1029, 1031-32 (Miss.1981), “it is not the description they intended to write which controls, but the property the parties intended to include in the description used.”
¶ 20. Under McCoy v. McCoy, 611 So.2d 957, 961 (Miss.1992), the court stated that the proper burden of proof in mutual mistake involving a reformation of a deed is the beyond a reasonable doubt standard. This case also states that “a chancehor’s findings of fact are unassailable on appeal unless those findings are manifestly wrong.” Id. at 960. In this case, the chancellor specifically found that “[t]he mutual mistake of the parties entitled the *644 [Bank] to a reformation of all deeds of trust to include a legal description of three acres of land with the house upon it.”
¶21. We find that the chancellor did apply the correct legal standard in this case and that the argument to the contrary is without merit.
3. Whether the court erred because it allowed the Bank to argue the case on a different set of facts, and argue a different standard of review from that claimed in the initial complaint.
¶22. The Whitefoots did not object at trial to the Bank’s argument about which they now complain on appeal. Under M.R.A.P. 15(b), “[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.” By failing to object at trial, the Whitefoots have waived the right to raise the issue on appeal. Norris v. Norris, 498 So.2d 809, 812 (Miss.1986).
¶ 23. Notwithstanding the procedural bar, the Court finds that the Bank’s arguments at trial are consistent with the various alternative counts found in its complaint and could not be the basis for reversal in this case.
4. Whether the court erred by its order to reform the Whitefoots’ thirty two acre tract against an unnecessary party without interest, instead of against real and necessary parties with interest, and erred by not including all necessary parties on both three and thirty two acre tracts reformations.
¶24. The Whitefoots argue that the court erred in entering an order concerning EB, Inc. which was originally listed as a party in this case and in failing to join Greystone Mortgage and FHA as necessary parties. As previously stated, these entities previously were lienholders on the thirty-two acres owned by the Whitefoots.
¶ 25. The agreed order about which the Whitefoots complain was entered on April 17,1998, and provided that EB, Inc. claims no interest in the property which is the subject of the litigation and that the deeds of trust of record in favor of EB, Inc. were to be reformed accordingly.
¶ 26. The Whitefoots never raised any objection to the order in the chancery court. They also failed to move for the joinder of Greystone Mortgage and the FHA as necessary parties to the litigation. Having failed to do so, they are precluded from raising this issue for the first time on appeal. Zurich American Ins. Co., Inc. v. Beasley Contracting Co., Inc., 779 So.2d 1132, 1134(¶ 11) (Miss.Ct.App.2000).
¶ 27. The Whitefoots cannot show any prejudice as a result of the order or failure to join other parties. The order did not affect the judgment entered by the court. Even if the issue had been raised, there is no basis for relief.
5.Whether the court erred by not basing the case on the intent revealed by the evidence in the 1997 renewal, instead of basing the case on past intent.
¶ 28. The Whitefoots’ fifth argument is largely a repeat of the first issue that the chancellor’s findings are not supported by the evidence. The Court is called on to review the evidence, particularly the testimony of David Whitefoot, that there was no intention to include the house in the 1997 renewal of the deed of trust and that the parties were aware that the legal description did not include the house. The Whitefoots argue that this evidence proves that there was no mutual mistake.
¶ 29. The evidence relied on by the Whitefoots was rejected by the chancellor as “unbelievable” and their argument as “unpersuasive.” The chancellor rejected *645 the argument that the Bank would inexplicably release the house and accept as collateral three unimproved acres locked in a thirty-two acre tract with no access.
¶ 30. The Whitefoots’ argument overlooks that, in an action to reform a deed based on a mistake theory, any instrument can be reformed on unilateral mistake where there is inequitable conduct by the benefitting party in connection with the mistake. McCoy, 611 So.2d at 961; see also United States Fidelity & Guaranty Co. v. Gough, 289 So.2d 925, 927 (Miss.1974). The chancellor specifically recognized that the equities were with the Bank as to the alleged difference in intent between the 1997 and 1995 deeds of trust. The court noted that “[t]he Whitefoots seize upon the differences but without offering to do equity to the Plaintiff.”
¶ 31. The Court finds that the chancellor correctly weighed the evidence and prevented an inequitable result.
6. Whether the court erred by not considering the 10 year statute of limitations to reform a deed because of a parties’ own mistake, negligence, or oversight, according to 15-1-7, of the Mississippi Code of 1972.
¶ 32. The Whitefoots argue that, since the Bank filed its suit more than ten years after the original 1988 deed of trust, the action should be barred.
¶ 33. This issue is raised for the first time on appeal. It is fundamental that the statute of limitations is an affirmative defense which must be raised in the answer or it is waived. See Gale v. Thomas, 759 So.2d 1150, 1157 n. 1 (Miss.1999).
¶ 34. Regarding claims to land, for the statute of limitations to apply the possession against the claimant must be adverse. O’Neal Steel, Inc. v. Millette, 797 So.2d 869, 872-73(¶ 11)(Miss.2001); Continental Oil Co. v. Walker, 238 Miss. 21, 33, 117 So.2d 333, 337 (1960). In this case, the Whitefoots’ possession of the property was never adverse to that of the Bank’s lien interest at any time prior to the 1997 renewal, if then. Also, the Bank did not seek reformation of the 1988 deed of trust, but rather the 1997 deed of trust. Consequently, there would be no statute of limitations issue even if the defense had been raised.
7. Whether the court erred by entering judgment against, or one that would affect the Whitefoots’ thirty two acre homestead, because the thirty two acres was declared a homestead years before judgment entered.
¶ 35. In their final argument, the Whi-tefoots argue that the judgment entered by the court impairs their right to homestead exemption. This argument was not raised until after the entry of final judgment.
¶ 36. Miss.Code Ann. § 89-1-29 (1972) provides that deeds of trust executed by both spouses are enforceable about their homestead. The Whitefoots have admitted that the Bank had a lien on their house at all times prior to the 1997 renewal. We find no merit to their argument that the 1997 renewal and extension of the previous deeds of trust deprived them of their homestead exemption.
¶ 37. THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, and GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.