**In re David Dewitt WHITEFOOT and Elena (Linda) R. Whitefoot, Debtors.**

**No. 92–40756.**

United States Bankruptcy Court, N.D. Mississippi.

Feb. 2, 2004.

David Dewitt Whitefoot, Elena R. Whitefoot, Cedar Bluff, MS, pro se, debtors.

Les Alvis, Riley, Caldwell, Cork & Alvis, PA, Tupelo, MS, for BancorpSouth.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion to reopen the above captioned Chapter 13 case, as well as, other requested relief, filed by David Dewitt Whitefoot and Elena (Linda) R. Whitefoot (debtors); response to said motion having been filed by BancorpSouth, formerly known as Bank of Mississippi (bank); and the court, having heard and considered same, hereby finds as follows, to-wit:

## I.

### JURISDICTION

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, in addition to the General Order of Reference entered by the United States District Court for the Northern District of Mississippi on July 27, 1984. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

## II.

### BANKRUPTCY CASE HISTORY

The debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 2, 1992. In their bankruptcy schedules, the debtors claimed a homestead exemption in their real property pursuant to § 85–3–21, Miss.Code Ann., as follows, to-wit:

A. "House and three (3) acres," having an exemption value of $42,000.00 and a total value of $42,000.00.

B. "32 acres of land," having an exemption value of $9,000.00 and a total value of $9,000.00.

The debtors initially indicated on their Schedule A that the amount of the secured claim encumbering the house and three acres was $43,000.00, and that the secured claim encumbering the thirty-two acres was $14,000.00. By an agreed order entered on July 27, 1992, the debtors consented that the thirty-two acre parcel had a fair market value of $15,163,19, and they agreed to pay this amount to Eastover Bank for Savings, plus interest at 12% per annum, over the life of their sixty month Chapter 13 plan.

An order was entered confirming the debtors' Chapter 13 plan on August 17, 1992. The plan indicated that the Bank of Mississippi would be paid directly or outside the plan at the rate of $418.45 per month beginning May 8, 1992. A separate order was entered on October 19, 1992, sustaining the Chapter 13 trustee's motion to allow claims.

Following the debtor's completion of their plan payments, an order was entered discharging the debtors on August 8, 1997. This was followed by an order closing the bankruptcy case on September 22, 1997.

The debtors filed the subject motion to reopen, etc., on December 24, 2003. The primary purpose of the reopening is to litigate the validity and extent of a deed of trust executed by the debtors in favor of the Bank of Mississippi in 1997. While the legal description set forth in the deed of trust is identical to that utilized in several previous deeds of trust, the debtors now assert that this description, which applies to the three acre parcel of land, does not encompass their residence which is actually located on the adjoining thirty-two acre parcel. The debtors take this position now notwithstanding the fact that in their bankruptcy schedules they specifically described their properties as "house and three (3) acres" and "32 acres of land."

The debtors contend that the bank was aware, at the time of the execution of the 1997 deed of trust, that their residence was not located on the three acre parcel

because the land had been surveyed prior to execution of the deed of trust. This survey purportedly revealed that the residence was not within legal description of the three acre parcel.

In 1998, the Bank of Mississippi initiated a lawsuit against the debtors in the Chancery Court of Clay County, Mississippi, Cause No. 98–0108, to reform the description of the deed of trust. A discussion of this litigation follows in the paragraphs hereinbelow.

## III.

### STATE COURT PROCEEDINGS

As noted hereinabove, the bank initiated a lawsuit against the debtors in chancery court. Following a fully litigated trial, the chancery court ordered a survey of the debtors' property so that the deed of trust executed by the debtors in favor of the bank could be reformed to include the debtors' residence. The chancery court also directed the bank to negotiate with the debtors for the purpose of re-amortizing the related indebtedness over a sufficient period of time so that the debtors would have a reasonable opportunity to pay it in full. A copy of the Chancellor's Opinion and Order, dated February 25, 1999, is appended hereto and incorporated herein as Exhibit A.

The debtors appealed the chancery court decision to the Court of Appeals for the State of Mississippi which affirmed the chancery court on June 24, 2003, in Case No. 2001–CP–01753–COA. A thorough discussion of the factual events pertinent to this proceeding is set forth in the appellate decision, a copy of which is appended hereto and incorporated herein as Exhibit B.

## IV.

### DISCUSSION

■ In their motion to reopen, etc., the debtors seek to bring the identical issues before this court that were litigated previously in the Chancery Court of Clay County, as well as, the Court of Appeals of the State of Mississippi. Although the debtors have filed a petition for a Writ of Certiorari with the Mississippi Supreme Court, at the present time, the decision of the Court of Appeals, affirming the chancery court, is binding precedent. As such, it is abundantly clear that the subject motion filed by the debtors is a request for this court to review the substance of the state court decisions.

The *Rooker–Feldman* doctrine, which provides that lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions, precludes any further consideration of this matter. The *Rooker–Feldman* doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), holding that the jurisdiction of the federal district courts is strictly original, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), holding that federal district courts do not have the authority to review final state court judgments. *See, United States v. Shepherd*, 23 F.3d 923 (5th Cir.1994) and 28 U.S.C. § 1257, which provide that federal appellate jurisdiction over state court decisions is vested almost exclusively in the United States Supreme Court. *See also, In the Matter of Erlewine (Ingalls v. Erlewine)*, 349 F.3d 205 (5th Cir.2003), and *In the Matter of Reitnauer (Reitnauer v. Texas Exotic Feline Foundation, Inc.)*, 152 F.3d 341 (5th Cir. 1998). Consequently, for the above reasons, the debtors' motion to reopen, etc., is not well taken and must be overruled.

Although it is not necessary to decide the debtors' motion to reopen, etc., the

court is compelled to mention the doctrine of judicial estoppel which was discussed in *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3rd Cir.1988), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), as follows:

> We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. *Scarano v. Central Railroad Co.,* 203 F.2d 510 (3rd Cir.1953); *USLIFE Corp. v. U.S. Life Insurance Co.,* 560 F.Supp. 1302 (N.D.Tex.1983).
>
> We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.

*Id.* at 419.

The Fifth Circuit expressly recognized the doctrine of judicial estoppel in *Ergo Science, Inc. v. Martin, et al,* 73 F.3d 595 (5th Cir.1996), where the court commented as follows:

> Viewed in this light, the issue is more akin to judicial estoppel. The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some

earlier proceeding. *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). We recognize the applicability of this doctrine in this circuit because of its laudable policy goals. The doctrine prevents internal inconsistency, precludes litigants from "playing fast and loose" with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment.

73 F.3d 595 at 598.

*See also, In the Matter of Coastal Plains, Inc.,* 179 F.3d 197 (5th Cir.1999), and *Hall v. GE Plastic Pacific PTE Ltd., et al,* 327 F.3d 391 (5th Cir.2003).

Judicial estoppel was recently applied by the Eleventh Circuit in *DeLeon v. Comcar Industries, Inc.,* 321 F.3d 1289 (11th Cir. 2003), to preclude a Chapter 13 debtor's post-bankruptcy cause of action against a former employer for discrimination and retaliation. The court determined that the debtor knew about the claim before filing bankruptcy and possessed a motive to conceal the claim from the court in order to reduce the payments to the estate's creditors.

■ Throughout the course of the administration of their Chapter 13 bankruptcy case, the debtors asserted without reservation or qualification that the claim of the Bank of Mississippi was secured by their "house and three (3) acres." The debtors acknowledged on several occasions in their most recent pleadings that they were fully aware that their house was not actually situated on the three acre parcel *prior* to the filing of their bankruptcy petition. Yet, they advocated a contrary position from the time that they filed their bankruptcy schedules, through confirmation, until they received a discharge and their case was closed. It was not until

after the bank initiated the deed of trust reformation cause of action in chancery court that the debtors officially asserted in a legal proceeding that the deed of trust did not encumber their residence because of the description defect. Clearly, this position is judicially inconsistent with what the debtors asserted throughout the pendency of their bankruptcy case. Without question, the validity and extent of the legal description should have and *could have* been addressed "head-on" when the debtors initially filed their bankruptcy case in 1992. It was not, and, therefore the doctrine of judicial estoppel has preclusive effect on the debtors' present motion.

As such, the court is of the opinion that the debtors' motion to reopen, etc., including the relief requested therein, must be overruled. Likewise, the debtors' motion to strike the affirmative defense raised by the bank is also overruled.

An order will be issued consistent with this opinion.

## EXHIBIT A

### IN THE CHANCERY COURT OF CLAY COUNTY, MISSISSIPPI

BANK OF MISSISSIPPI, plaintiff,

VERSUS

David WHITEFOOT, aka David Jones, Elena Whitefoot, aka Linda Whitefoot aka Linda Jones, and EB, Inc., defendants.

No. 98–0108.

### OPINION AND ORDER

This cause came on to be heard upon pleadings and proof. The Defendant EB, Inc. has filed its consent to the relief sought by the Plaintiff against it, and the remaining Defendants, the Whitefoots, have defended pro se. The Plaintiff filed this suit on March 12, 1998. The White-

foots have counterclaimed against the Plaintiff for certain relief.

The proof establishes that the Whitefoots in 1988 borrowed a large sum of money from the Plaintiff and agreed to secure that loan with a mortgage lien against their home and three acres upon which it was situated. The total acreage of the tract of land owned by the Whitefoots was 35 acres. The deed of trust given by the Whitefoots in 1988 described the whole 35 acre tract of land. Since the parties had agreed to only place the home and three acres as security to the Plaintiff, the Plaintiff executed a partial release from its deed of trust of the other 32 acres, and the Whitefoots mortgaged the said 32 acres to Eastover Bank for Savings.

The original loan from the Plaintiff to the Whitefoots was payable over a few years in monthly installments and with a substantial balloon payment at maturity. The Whitefoots renewed the loan at maturity and renewed the deed of trust securing the loan. The parties still intended that the house and three acres serve as collateral for the loan. In 1992 the Whitefoots filed Chapter 13 bankruptcy and listed the two creditors, Eastover and the Plaintiff, as secured by mortgages on the 32 acres and 3 acres respectively. The Bankruptcy Court was informed that the home was security for the Plaintiff and on the three acre tract. Subsequently a survey in 1997 revealed that the home and the driveway were actually located on the 32 acre tract and not on the legal description in the Plaintiff's deeds of trust describing the three acre tract.

After 1988, an additional loan was made to the Whitefoots the Plaintiff. At trial it was revealed that the Whitefoots still owe the Plaintiff $303.96 on this additional loan. On April 26, 1995 the Whitefoots refinanced the unpaid balance remaining from the original 1988 loan by a renewal note

and renewal deed of trust payable by monthly payments and a balloon payment on May 8, 1997. It is not disputed that this renewal loan was to continue to be secured by the Whitefoots' home and three acres of land as per the original loan and original deed of trust. The legal description in this deed of trust is the same as found in the subsequent renewal deed of trust executed by the Whitefoots on June 26, 1997. The three acres of land, with the house intended to be located thereon, was described as a lot fronting on a road and being 365 feet by 365 feet.

On June 26, 1997 the Whitefoots renewed the 1995 renewal note another renewal note, and they executed a renewal deed of trust. The 1997 renewal note however left an unpaid interest payment owing on the 1995 renewal note in a sum for unpaid interest now totaling $708.20. The 1997 renewal note stated it was secured by a three acre tract, but it made no mention of a house. The 1995 renewal note had included the house in the description of the security. The Whitefoots argue that this omission evidences the intention of the Plaintiff to abandon any mortgage lien on the house. The Whitefoots argue that the Plaintiff has now discovered that it made a mistake in not including the house in the 1997 renewal note, and that they, the Whitefoots, would have had no choice but to agree in 1997 that the house was securing their unpaid loan from the Plaintiff. The Whitefoots now argue that the Plaintiff only asked for a renewal deed of trust on the vacant three acre tract and did not seek the house as security for the 1997 renewal note, based upon the omission of "house" from the 1997 renewal note and upon the failure to demand insurance on the house from the Whitefoots after the 1997 renewal. The Court finds this argument unpersuasive, The Court finds no agreement by the Plaintiff to waive or release its lien upon the house and an accompanying underlying three acre tract.

The Court finds beyond a reasonable doubt that the parties intended in 1988 to have the 1988 deed of trust secure the 1988 loan by a mortgage lien upon the house and three acres upon which the house was situated. The Court further finds beyond a reasonable doubt that said intention continued with each renewal note and renewal deed of trust through the discovery in 1997 by a survey, that the house was not located on the three acre described in the earlier deeds of trust.

In 1997 when the error was established by the survey and the loan came up for renewal, the loan was renewed and the deed of trust was renewed. The Whitefoots were in default on the 1995 note and wanted to believe that their house could not be foreclosed because the house was not included in the prior deeds of trust legal descriptions. The Plaintiff's loan officer did not have a legal description of a three acre lot on which the house was situated and renewed the loan and deed of trust as had been done before, with the exception of noting the described three acre tract was worth considerably less than the loan because no house was on it. This differed from earlier documentation which valued the three acres as containing the house. The Whitefoots seize upon this difference but without offering to do equity to the Plaintiff. The Whitefoots are reduced to picayune arguments in their hope to be relieved of their legal obligation to pay their debt by having their house foreclosed to raise the money to pay their debt to Plaintiff. They want the Plaintiff to have effectively relieved them of their obligation based upon an unbelievable intention of the Plaintiff to make them a gift of its security interest in the house or upon a mistake in doing so from which the Plain-

tiff would be entitled to relief in equity. The proof is insufficient for a finding that the Plaintiff released its right to a mortgage lien on the house. The equities in this case clearly favor the Plaintiff, as does the law. "A court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purpose of justice, and the actual and just intention of the parties. It must at all events, be an innocent purpose, and injurious to no one." *Starr v. Ellis*, 6 Johns. Ch. [N.Y.] 393, 1822 WL 1746, cited in *Lewis v. Starke*, 18 Miss. 120, 10 Smedes & M. 120 (Miss. 1848).

A mere change in the form of the evidence of indebtedness will not operate to discharge a lien given to secure a debt unless is apparent that the parties intended to extinguish the lien. *Gleason v. Wright*, 53 Miss. 247, 1876 WL 7375 (1876) To have the effect of extinguishing the lien, it must be shown that the intent of putting the debt in new form was to work an extinguishment. *Kausler v. Ford*, 47 Miss. 289 (1872). A party having a specific legal lien upon property, cannot be divested of it, except by some distinct act of his own, amounting to a waiver or absolute abandonment of it. The defense of waiver or abandonment should be made out and established by "full, clear and positive testimony." The rights of a mortgagee in his lien cannot be divested legally but in one of two ways: either by reconveyance by the mortgagee or by the absolute payment of the mortgage money. *Feard v. Evans*, 1 Freem. Ch. 79 (1843).

The mutual mistake of the parties entitles the Plaintiff to a reformation of all deeds of trust to include a legal description of three acres of land with the house upon it. The Whitefoots agreed in the 1997 deed of trust that the 1997 deed of trust was a renewal of the 1995 deed of trust, and the 1995 deed of trust was intended by the parties to include a legal description for the house and three acres. The Plaintiff may foreclose any of the reformed deeds of trust as the original debt has not been paid and is now in default and the original mortgage has never been satisfied. The Whitefoots are indebted to the Plaintiff in the total sum of $46,163.57 and are in default in payment causing the total debt to be now due and payable.

The Plaintiffs agreed to pay the Plaintiff a reasonable attorney's fees in collecting any debt in default. The Court finds the substantial portion of the attorney's fees to date requested by the Plaintiff relates to the error caused by the mutual mistake of the parties in the legal description. The Plaintiff should bear this expense as a regular cost of its business. No attorney's fees are awarded to the Plaintiff as of this stage of the proceeding. The Plaintiff is entitled to a reasonable attorney's fee in the collection of its debt. The Court will establish that sum at the conclusion of this litigation.

The Plaintiff shall cause a survey to be made to provide a legal description for three acres of land which includes the house and driveway with the curtilage appropriate thereto as is now existing. The Whitefoots may assist in the establishing of this survey or may object to the Plaintiff's survey and propose an alternative as the more probable intention of the parties in 1988 as to the three acre house site.

It is therefore ordered that the deeds of trust given to the Plaintiff by the Whitefoots beginning in 1988 through date, to secure the payment of the subject indebtedness to Plaintiff shall be reformed to contain a legal description to be approved by the Court after submission of the survey directed herein above to be made. It is further ordered that this cause remain on the docket for entry of such further

orders and judgement as necessary in the premises, including but riot limited to foreclosure by sale. The Whitefoots counterclaim against the Plaintiff is denied with prejudice. All court costs to date shall be taxed to the Whitefoots.

The Plaintiff in seeking equity must be willing to do equity. Upon determination of the proper legal description and the reformation of the deeds of trust, the Plaintiff shall in good faith attempt to negotiate with the Whitefoots a renewal of the subject indebtedness amortized over a sufficient period of time to create an opportunity for the Whitefoots to pay the indebtedness and retain their homestead. Having sought judicial foreclosure, the Plaintiff shall not resort to its power of sale in the deeds of, trust while this suit is pending.

Dated: Feb. 25, 1999.

### EXHIBIT B

### IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

David WHITEFOOT and Elena Whitefoot, appellants,

v.

BANCORPSOUTH BANK f/k/a Bank of Mississippi, appellee.

No. 2001–CP–01753–COA.

DATE OF TRIAL COURT JUDGMENT: 8/28/2001

TRIAL JUDGE: HON. ROBERT L. LANCASTER

COURT FROM WHICH APPEALED: CLAY COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT: DAVID WHITEFOOT (PRO SE), ELENA WHITEFOOT (PRO SE)

ATTORNEYS FOR APPELLEE: LES ALVIS, PAT CALDWELL

NATURE OF THE CASE: CIVIL—REAL PROPERTY

TRIAL COURT DISPOSITION: APPROVED LEGAL DESCRIPTION DERIVED FROM SURVEY, REFORMED ALL DEEDS OF TRUST AND AUTHORIZED APPELLEE TO ENFORCE ITS DEEDS OF TRUST ACCORDING TO TERMS, AS REFORMED

DISPOSITION: AFFIRMED: 6/24/2003

MOTION FOR REHEARING FILED:

CERTIORARI FILED:

MANDATE ISSUED:

BEFORE KING, P.J., MYERS AND GRIFFIS, JJ.

KING, P.J., for the Court.

¶ 1. Bank of Mississippi, now known as BancorpSouth, filed suit in the Chancery Court of Clay County seeking reformation of the legal description of property used as collateral for a bank loan by the appellants, David and Elena Whitefoot, formerly known as David and Linda Jones. The court ruled in favor of the Bank and directed that a survey be made to create a legal description comporting with the intent of the parties. Final judgment was entered on August 29, 2001, approving the legal description derived from the survey, reforming all deeds of trust and authorizing the Bank to enforce its deeds of trust according to their terms, as reformed.

¶ 2. The Whitefoots filed an appeal after the chancery court denied their Rule 59 motion for relief from judgment.

¶ 3. The Whitefoots raise the following assignments of error:

1. Whether the court erred because its findings of fact and conclusions of law are wrong, and not supported by the evidence in the case.

2. Whether the court erred because it used the wrong standard of review in judging the case.

3. Whether the court erred because it allowed the Bank to argue the case on a different set of facts, and argue a different standard of review from that claimed in the initial complaint.

4. Whether the court erred by its order to reform the Whitefoots' thirty two acre tract against an unnecessary party without interest, instead of against real and necessary parties with interest, and erred by not including all necessary parties on both three and thirty two acre tracts reformations.

5. Whether the court erred by not basing the case on the intent revealed by the evidence in the 1997 renewal, instead of basing the case on past intent.

6. Whether the court erred by not considering the 10 year statute of limitations to reform a deed because of a parties' own mistake, negligence, or oversight, according to 15–1–7, of the Mississippi Code of 1972.

7. Whether the court erred by entering judgment against, or one that would affect the Whitefoots' thirty two acre homestead, because the thirty two acres was declared a homestead years before judgment entered.

This Court finds no error and affirms.

## FACTS

¶ 4. The Whitefoots, formerly the Joneses, own thirty-five acres in Clay County, Mississippi. The subject of this appeal is a three acre tract that was carved out of the total acreage by the Farmers Home Administration in 1981. The FHA financed the construction of a house 1981 which was supposed to be on the three acres, but which in reality was on the remaining thirty-two acres.

¶ 5. On February 5, 1988, the Whitefoots transferred a deed of trust and security agreement on the three acres to the Bank of Mississippi by way of a thirty day promissory note. When the Bank accepted the three acre tract as security from the FHA in 1998, it was thought by the FHA, Bank and the Whitefoots to cover the Whitefoots' house. The 1988 security agreement listed the house and three acres as collateral.

¶ 6. The note with deed of trust and security agreement was renewed in 1990 with the house and three acres again listed as collateral. David Whitefoot contends that he notified the bank president that the house did not appear to be on the three acre tract and that the Bank declined his offer to survey the property, but renewed the note as it was. In 1992 the note was again renewed with the house and three acres listed as collateral on the security agreement.

¶ 7. In 1992, prior to the renewal, the Whitefoots declared Chapter 13 bankruptcy and listed the three acres and house as being mortgaged to the Bank. The Whitefoots indicated that they knew their house was not on the three acres when they discovered the homestead records listed the house as being on the thirty-two acres and had listed it that way since 1982. In the bankruptcy action, the Whitefoots did not file against the Bank, but rather agreed to keep all loans with the Bank. They did however file against EB, Inc., the mortgage holder on the thirty-two acres.

¶ 8. While the bankruptcy was in progress, EB, Inc. sold its interest to another mortgage holder, which in turn sold its interest to Greystone Mortgage Co. Greystone was the Mortgage holder when the Whitefoots completed their Chapter 13 plan in August 1997. As a result of com-

pleting their Chapter 13 plan, the Whitefoots own the thirty-two acres free of all liens since these were paid off in the bankruptcy plan.

¶ 9. In its complaint, the Bank listed EB, Inc. as a party because EB, Inc. was still shown as the record lienholder on the uncancelled deed of trust on the thirty-two acre tract. EB, Inc. was released as a party by agreement with the Bank and order of the chancery court.

¶ 10. In 1995, the Whitefoots refinanced the note on the three acre deed of trust and security agreement with the Bank. Again, the Bank listed the house and three acres as collateral on the security agreement. According to the Whitefoots, the bank president promised that he would have a survey done at the completion of the Chapter 13. In 1996, a new bank president was appointed.

¶ 11. On June 26, 1997, the Whitefoots' note on the three acres came up for renewal again. The Bank and the Whitefoots renewed the note by renewal deed of trust and security agreement. This time the 1997 renewal security agreement did not list the Whitefoots' house as collateral. The Bank would later claim that the 1997 security agreement did not have to list the house as collateral in order for the Bank to have a security interest. The Whitefoots' argument on appeal is premised on the Bank's failure to list the house in the 1997 renewal. The Whitefoots never made any payments on the 1997 note and now contend that they should own their house outright, with the only collateral on the loan being the three acres.

¶ 12. The Whitefoots and the Bank agreed that it was their intent that the house and three acres were to be collateral for the original loan and the subsequent renewals in 1990, 1992, and 1995. The dispute is whether the 1997 renewal was to include the house. The Whitefoots argue that the Bank was fully aware that the property description in the deed of trust did not include the property on which the house was located and that the Bank was willing to accept the three acres alone as collateral because there was insufficient time to get a new survey and description. At the time of trial the amount owed by the Whitefoots and secured by the deeds of trust was $46,163.57, and the value of the three acres alone was approximately $3,000.

## DISCUSSION

1. Whether the court erred because its findings of fact and conclusions of law are manifestly wrong, and not supported by the evidence the case.

¶ 13. An appellate court will not disturb a chancellor's findings of fact unless the chancellor abused his discretion, was manifestly wrong, was clearly erroneous or applied an erroneous legal standard. *Turpin v. Turpin*, 699 So.2d 560, 564 (¶ 14)(Miss.1997); *Wilson v. Wilson*, 810 So.2d 615 (Miss.Ct.App.2002).

¶ 14. The Whitefoots' argument is that the Bank became aware that the house was outside the legal description prior to the renewal of the loan in 1997, and therefore waived its right to claim a lien on the house when it knowingly used the erroneous description in the last renewal deed of trust.

¶ 15. As argued by the Bank, the chancellor gave detailed findings in support of his conclusions. The chancellor was fully satisfied that, notwithstanding the erroneous description in 1997, that what the parties intended was clear beyond a reasonable doubt. The chancellor characterized as "unbelievable" the Whitefoots' evidence that the Bank intended to abandon its claim on the house. The chancellor was fully satisfied with the explanation that no other description was available and that

the exigent circumstances surrounding the loan made it necessary to use the erroneous description. The chancellor specifically found that looking to the entirety of the transaction that the parties' intent was to renew, extend and continue the lending relationship which began in 1988 and surrounded all the prior transactions. Even David Whitefoot in his testimony agreed that the Bank had a lien on the house at all times prior to the 1997 renewal. Thus, the chancellor was correct in finding that if the 1995 deed of trust covered the house, the 1997 deed of trust did as well.

¶ 16. Under the existing standard of review, this Court cannot reweigh the evidence to reach a different conclusion. In this case, the chancellor was in the best position to listen to the witnesses, observe their demeanor and determine their credibility. *Rogers v. Morin*, 791 So.2d 815, 826 (¶ 39) (Miss. 200 1); *Carter vs Carter*, 735 So.2d 1109 (Miss.Ct.App.1999).

¶ 17. We find no error in the chancellor's findings.

2. Whether the court erred because it used the wrong standard of review in judging the case.

¶ 18. The Whitefoots argue that the court erred when it decided the case on Mississippi case law that says that a mere change in the form of the evidence of the debt cannot operate to discharge a lien. They contend that the court should have applied case law based on mutual mistake, to reform a deed or contract. Their position is that the Bank never had an actual lien on the house, only an intention to have a lien. The Whitefoots also argue that mutual mistake could be the only basis for reformation of the deed of trust and that there was no mutual mistake in the 1997 deed of trust.

¶ 19. As noted by the Bank, an action to reform a deed depends on the existence of a deed which on its face does not reflect what the parties intended. The lower court found that the Batik did have a lien on the property in question as a matter of equity by virtue of the intentions of the parties repeated over several transactions. There is no dispute that this mutual mistake continued through 1995. As stated in *Webb v. Brown*, 404 So.2d 1029, 1031–32 (Miss.1981), "it is not the description they intended to write which controls, but the property the parties intended to include in the description used."

¶ 20. Under *McCoy v. McCoy*, 611 So.2d 957, 961 (Miss.1992), the court stated that the proper burden of proof in mutual mistake involving a reformation of a deed is the beyond a reasonable doubt standard. This case also states that "a chancellor's findings of fact are unassailable on appeal unless those findings are manifestly wrong." *Id.* at 960, In this case, the chancellor specifically found that "[t]he mutual mistake of the parties entitled the [Bank] to a reformation of all deeds of trust to include a legal description of three acres of land with the house upon it."

¶ 21. We find that the chancellor did apply the correct legal standard in this case and that the argument to the contrary is without merit.

3. Whether the court erred because it allowed the Bank to argue the case on a different set of facts, and argue a different standard of review from that claimed in the initial complaint.

¶ 22. The Whitefoots did not object at trial to the Bank's argument about which they now complain on appeal. Under M.R.A.P. 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." By failing

to object at trial, the Whitefoots have waived the right to raise the issue on appeal. *Norris v. Norris*, 498 So.2d 809, 812 (Miss.1986).

¶ 23. Notwithstanding the procedural bar, the Court finds that the Bank's arguments at trial are consistent with the various alternative counts found in its complaint and could not be the basis for reversal in this case.

4. Whether the court erred by its order to reform the Whitefoots' thirty two acre tract against an unnecessary party without interest, instead of against real and necessary parties with interest, and erred by not including all necessary parties on both three and thirty two acre tracts reformations.

¶ 24. The Whitefoots argue that the court erred in entering an order concerning EB, Inc. which was originally listed as a party in this case and in failing to Join Greystone Mortgage and FHA as necessary parties. As previously stated, these entities previously were lienholders on the thirty-two acres owned by the Whitefoots.

¶ 25. The agreed order about which the Whitefoots complain was entered on April 17, 1998, and provided that EB, Inc. claims no interest in the property which is the subject of the litigation and that the deeds of trust of record in favor of EB, Inc. were to be reformed accordingly.

¶ 26. The Whitefoots never raised any objection to the order in the chancery court. They also failed to move for the joinder of Greystone Mortgage and the FHA as necessary parties to the litigation. Having failed to do so, they are precluded from raising this issue for the first time on appeal. *Zurich American Ins. Co., Inc. v. Beasley Contracting Co., Inc.*, 779 So.2d 1132, 1134(¶ 11)(Miss.Ct.App.2000).

¶ 27. The Whitefoots cannot show any prejudice as a result of the order or failure to join other parties. The order did not affect the judgment entered by the court. Even if the issue had been raised, there is no basis for relief

5. Whether the court erred by not basing the case on the intent revealed by the evidence in the 1997 renewal, instead of basing the case on past intent.

¶ 28. The Whitefoots' fifth argument is largely a repeat of the first issue that the chancellor's findings are not supported by the evidence. The Court is called on to review the evidence, particularly the testimony of David Whitefoot, that there was no intention to include the house in the 1997 renewal of the deed of trust and that the parties were aware that the legal description did not include the house. The Whitefoots argue that this evidence proves that there was no mutual mistake.

¶ 29. The evidence relied on by the Whitefoots was rejected by the chancellor as "unbelievable" and their argument as "unpersuasive." The chancellor rejected the argument that the Bank would inexplicably release the house and accept as collateral three unimproved acres locked in a thirty-two acre tract with no access.

¶ 30. The Whitefoots' argument overlooks that, in an action to reform a deed based on a mistake theory, any instrument can be reformed on unilateral mistake where there is inequitable conduct by the benefitting party in connection with the mistake. *McCoy*, 611 So.2d at 961; see also *United States Fidelity & Guaranty Co. v. Gough*, 289 So.2d 925, 927 (Miss. 1974). The chancellor specifically recognized that the equities were with the Bank as to the alleged difference in intent between the 1997 and 1995 deeds of trust. The court noted that "[t]he Whitefoots seize upon the differences but without offering to do equity to the Plaintiff."

¶ 31. The Court finds that the chancellor correctly weighed the evidence and prevented an inequitable result.

6.  Whether the court erred by riot considering the 10 year statute of limitations to reform a deed because of a parties' own mistake, negligence, or oversight, according to 15–1–7, of the Mississippi Code of 1972.

¶ 32. The Whitefoots argue that, since the Bank filed its stilt more than ten years after the original 1988 deed of trust, the action should be barred.

¶ 33. This issue is raised for the first time on appeal. It is fundamental that the statute of limitations is an affirmative defense which must be raised in the answer or it is waived. *See Gale v. Thomas,* 759 So.2d 1150, 1157 n. 1 (Miss.1999).

¶ 34. Regarding claims to land, for the statute of limitations to apply the possession against the claimant must be adverse. *O'Neal Steel, Inc. v. Millette,* 797 So.2d 869, 872–73 (¶ 11)(Miss.2001); *Continental Oil Co. v. Walker,* 238 Miss. 21, 33, 117 So.2d 333, 337 (1960). In this case, the Whitefoots' possession of the property was never adverse to that of the Bank's lien interest at any time prior to the 1997 renewal, if then. Also, the Bank did not seek reformation of the 1988 deed of trust, but rather the 1997 deed of trust. Consequently, there would be no statute of limitations issue even if the defense had been raised.

7.  Whether the court erred by entering judgment against, or one that would affect the Whitefoots' thirty two acre homestead, because the thirty two acres was declared a homestead years before judgment entered.

¶ 35. In their final argument, the Whitefoots argue that the judgment entered by the court impairs their right to homestead exemption. This argument was not raised until after the entry of final judgment.

¶ 36. Miss.Code Ann. § 89–1–29 (1972) provides that deeds of trust executed by both spouses are enforceable about their homestead. The Whitefoots have admitted that the Bank had a lien on their house at all times prior to the 1997 renewal. We find no merit to their argument that the 1997 renewal and extension of the previous deeds of trust deprived them of their homestead exemption.

¶ 37. **THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANTS.**

McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, and GRIFFIS, JJ., concur. CHANDLER, J., not Participating.