GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Alex Trotter filed a complaint to quiet and remove clouds on title against adjoining landowners, Francis N. Burgess, Sr.; Francis N. Burgess, Jr.; and Lula Burgess. The Burgesses filed a counterclaim to quiet title and remove clouds on the same property. After the initial trial, the chancellor determined that Trotter owned the property in dispute and found that the ambiguously conveyed 140-yard strip of property should be located at the driveway of the Burgesses’ home thereby creating a right of access from the home to the Bolton-Brownsville Road.
 

 ¶ 2. The Burgesses then appealed. In
 
 Burgess
 
 v.
 
 Trotter,
 
 840 So.2d 762 (Miss.Ct.App.2003)
 
 (“Burgess
 
 /”), this Court reversed and remanded the case for the chancellor to reconsider and determine: (1) the ownership of parcel two as shown on our attached exhibit,
 
 [1]
 
 and (2) the location of the 140-yard strip mentioned in the 1941 deed because it had not been definitely located.
 

 ¶ 3. On remand, the chancellor found that Trotter owned parcel two and provided a definite legal description of the 140-yard strip located along the Burgesses’ driveway. It is from this judgment that the Burgesses now appeal. We find no error in the chancellor’s findings on remand and affirm.
 

 FACTS
 

 ¶ 4. This controversy involves land located in the NW 1/4 of the SW 1/4 of Section 20, Township 7 North, Range 2 West, Second Judicial District, Hinds County, Mississippi. Stella V. Trotter is the common source of title for this land. In 1911, Stella V. Trotter and her husband, R.W. Trotter, conveyed by warranty deed the E 1/2 of the SW 1/4 and five acres off the east side of the W 1/2 of the SW 1/4 to W.S. Hendricks. Hendricks later conveyed this land to Emma Hardy in 1921. In 1927, Hardy conveyed this same and other land by warranty deed to A.L. Burgess.
 
 [2]
 

 ¶ 5. The current dispute stems from the ownership of parcel two — the frontage property abutting the former Bolton-Brownsville Road. Our attached exhibit shows the location of both the former Bolton-Brownsville Road and the current Bolton-Brownsville Road. Both parties stipulated in a pretrial order that the Bolton-Brownsville Road was moved to its new location sometime prior to 1923.
 
 [3]
 

 
 *1112
 
 ¶ 6. In 1941, Stella V. Trotter and R.W. Trotter conveyed by warranty deed to A.L. Burgess the following property:
 

 A narrow strip of land approximately 140 yards long, lying between the old and new Bolton and Brownsville Highway, and adjoining the land now owned by said A.L. Burgess, and being in the west half of the southwest quarter of Section 20, Township 7 in Range 2 West, containing one acre more or less.
 

 ¶ 7. In 1997, Francis Burgess, Sr. (“Burgess”), attempted to sell all of the Bur-gesses’ property in Hinds County except for his fenced homestead. After the land was surveyed, Burgess claims that he discovered for the first time that his property line was not the western border of parcel two at the old Bolton-Brownsville Road; instead, it was the western border of parcel one which lies east of the road. Trotter, however, testified in both trials that his family had always considered the Bur-gesses’ property to be east of the old Bolton-Brownsville Road.
 

 ¶ 8. Upon the parties’ claims to quiet title, the chancellor determined that Trotter owned most of the disputed property. She also found that the ambiguous language in the 1941 deed conveyed “a strip beginning at the [sjouth edge of the Burgess driveway running [e]ast over to the Burgess property” giving the Burgesses access across Trotter’s property to the new Bolton-Brownsville Road.
 

 ¶ 9. In
 
 Burgess I,
 
 this Court determined that the chancellor did not consider whether there was a mistake as to the ownership of parcel two. Further, the chancellor did not specifically locate the 140-yard strip described in the 1941 deed. Therefore, this Court reversed and remanded the case for the chancellor to reconsider and determine: (1) the ownership of parcel two and (2) the definite location of the 140-yard strip mentioned in the 1941 deed.
 
 [4]
 

 ¶ 10. In the interest of clarity, before we delve further into the complicated facts of this appeal, we will now list the three relevant deeds and the corresponding land conveyed by each deed:
 

 1911 deed: Conveyed the E 1/2 of the SW 1/4 and five acres off the east side of the W 1/2 of the SW 1/4 (this area includes parcel one on our exhibit, but it does not include parcel two). The legal description of the land conveyed in this deed is clear and unambiguous.
 

 1927 deed: Conveyed to A.L. Burgess the exact property described in the 1911 deed.
 

 1941 deed: Conveyed to A.L. Burgess a 140-yard strip of land, the location of which is at issue here because the legal description of the land conveyed is ambiguous. On remand, the chancellor determined this land was located along the Burgesses’ driveway. The Burgesses claim that it should be located at parcel three on our exhibit.
 

 f 11. Attorney K.F. Boackle testified as a real estate expert on behalf of the Bur-gesses. Boackle opined that “the 1911 deed was intended to bring the then present Burgess land, which was [east of the old highway], over to the old Bolton-Brownsville Highway.” Boackle stated that the survey, which was conducted in 1997, revealed that the 1911 deed did not bring the Burgesses’ land over to the old highway; thus, he stated that Trotter had record title. However, Boackle opined that the Burgesses had equitable title
 
 *1113
 
 based on an interpretation of the deeds. Boackle based his opinion on an old pin found by a surveyor that marked the southwest corner along the old road bed. He stated that the parties to the deed and them subsequent grantees were mistaken as to where the property line was actually located because they did not use professional surveyors. Thus, he believed that the 1927 conveyance was intended to extend the Burgesses’ property over to the old road.
 

 ¶ 12. Next, Boackle addressed the 1941 deed. He opined that the purpose of the 1941 deed was to extend the Burgesses’ property from the old road over to the eastern side of the new Bolton-Brownsville Road. Boackle’s interpretation of the 1941 deed gave the Burgesses 1.33 acres of land that would front the new Bolton-Brownsville Road (parcel three). He said that the eastern and western boundaries of this “strip” would be the old and new road. He determined that the northern boundary would be the half-section line and the southern boundary would be one of the fences that the surveyor testified was destroyed sometime after 1997. Boackle said that when he viewed the property he found wire in the trees where the fence was located on the survey. Boackle said that he rejected the 140-yard measurement in the deed in favor of the one acre because Mississippi law emphasizes quantity over distance. Boackle’s description, however, was 1.33 acres instead of one acre. Boack-le addressed this discrepancy by stating that the 1941 deed’s description calls for one acre more or less instead of one acre.
 

 ¶ 13. Attorney Si M. Bondurant was called as a real estate expert by Trotter. Bondurant opined that parcel two belonged to Trotter because:
 

 the property has been described consistently, albeit there were certain errors that have been corrected, but the property has been consistently described as the east half of the southwest quarter and the east five acres of the west half of the southwest quarter which is an 85-acre contiguous tract and it is a clear and precise and unambiguous legal description that can be clearly located and identified.
 

 Bondurant further opined that the only way to place ownership of parcel two in the Burgesses would be to reform the 1927 deed to provide for a different description. Bondurant, however, asserted that reformation was not necessary in this case because there was “no evidence of mutual mistake. Certainly not evidence beyond a reasonable doubt....”
 

 ¶ 14. Next, Bondurant gave his opinion regarding the 1941 deed. Bondurant agreed with Boackle that the description in the 1941 deed was ambiguous. Bondurant asserted that the property actually constituted one acre with the western boundary being the new Bolton-Brownsville Road, the northern boundary being the north line of the northwest quarter of the southwest quarter, the eastern boundary being the west line of the east two and a half acres, and the southern boundary being a far enough distance south to constitute one acre. Bondurant opined that the purpose of the 1941 deed was to convey a right of access along the Burgesses’ driveway to their homestead and their property.
 

 ¶ 15. Bondurant admitted that his description did not place the strip exclusively between the two roads. Instead, Bondu-rant’s description is a rectangle that follows the Burgesses’ driveway, which runs mainly east/west. He addressed this fact by stating that he had to harmonize all the descriptions in the deed. He reasoned that the deed said “lying between” and not “lying exclusively between” the two roads. Furthermore, he asserted that the property could not lie between the two roads and
 
 *1114
 
 “join with the land owned by the Burgess-es,” because parcel two belongs to Trotter.
 

 ¶ 16. Bondurant admitted that his description does not give the Burgesses one acre of property between the two roads, but his description does constitute one acre. Furthermore on re-direct examination, Bondurant stated that if 1.33 acres could be considered more or less one acre, as claimed by Boackle, then the .67 acres between the two roads could be considered “more or less one acre.”
 

 ¶ 17. After the trial on remand, the chancellor again determined that Trotter owned parcel two, and she again located the 140-yard strip along the Burgesses’ driveway. She, however, did give the strip a definite description.
 
 [5]
 

 ¶ 18. On appeal, the Burgesses argue that the chancellor erred by: (1) failing to follow the mandates of
 
 Burgess I,
 
 (2) analyzing whether or not there was a mutual mistake in the deed instead of a mutual mistake as to the location of the boundary line, (3) locating the 140-yard strip in the same area as she previously located it, (4) treating the Burgesses’ property as a monument of title in the 1941 deed, (5) relying on testimony that was barred by collateral estoppel, and (6) failing to consider testimony regarding the existence of certain fences.
 

 STANDARD OF REVIEW
 

 ¶ 19. This Court will not reverse a chancellor’s determinations or findings when they are supported by substantial, credible evidence, unless the chancellor’s findings are an abuse of discretion, manifestly wrong, clearly erroneous, or the result of an erroneously applied legal standard.
 
 Jackson v. Peoples Bank and Trust Co.,
 
 869 So.2d 422, 423(¶ 5) (Miss.Ct.App.2004) (citing
 
 Rice v. Pritchard,
 
 611 So.2d 869, 872 (Miss.1992)). Furthermore, we emphasize that “[i]t is not the job of this Court to redetermine questions of fact resolved by the chancellor.”
 
 Id.
 
 (citing
 
 Johnson v. Black,
 
 469 So.2d 88, 90 (Miss.1985)).
 

 ANALYSIS
 

 I. Did the chancellor commit manifest error by not following Burgess I?
 

 ¶ 20. The Burgesses argue that the chancellor committed manifest error on remand by ignoring this Court’s directives in
 
 Burgess I.
 
 The Burgesses rely on the cases of
 
 G.B. “Boots" Smith Corp. v. Cobb,
 
 911 So.2d 421 (Miss.2005) and
 
 Dunn v. Dunn,
 
 695 So.2d 1152, 1155 (Miss.1997). In
 
 Dunn,
 
 the supreme court stated:
 

 The mandate issued by an appellate court is binding on the trial court on remand. Where this Court has already decided a specific issue in a case on a prior appeal, the trial court has been found to be in error where, on remand,
 
 *1115
 
 it has refused to follow this Court’s opinion and directions.
 

 Dunn,
 
 695 So.2d at 1155 (internal citations omitted).
 

 ¶ 21. The Burgesses also rely on
 
 California Co. v. State Oil & Gas Board,
 
 200 Miss. 824, 848, 28 So.2d 120, 121 (1946), which states in pertinent part that “sometimes the Supreme Court reverses and remands cases with instructions, but such instructions are limited to matters necessary to implement the judgment of the Court, and in no sense of the word are, or should be, merely advisory.”
 

 ¶ 22. In their brief, the Burgesses quote at length from
 
 Burgess I.
 
 None of these quotes, however, constitute a mandate or a directive from this Court. Instead, this Court was merely attempting to explain why it was remanding this case for further fact-finding. The following excerpts are some of the language from
 
 Burgess I
 
 quoted in the Burgesses’ brief:
 

 Ignoring the 140 yards of undirected distance, the language suggests that the entire property is between the old and new locations of the road, and that by lying there, it also borders the Burgess property. Without giving too much weight to the almost weightless, we conclude that the most natural reading of the deed language itself is consistent with the Burgess view that their family property historically bordered the old road.
 

 [[Image here]]
 

 Since we find
 
 the natural reading of the actual language is to define a tract that lay totally between the two roads and was contiguous to land then owned by Burgess,
 
 we examine the effect of each party’s argument about the deed’s meaning to see if either falls within these parameters.
 

 [[Image here]]
 

 In fact, we find that a quite credible interpretation of all the evidence, especially the conveyance in 1927 of a total of 5 acres, half in the forty[-]acre tract involved in this suit and the other half to the south, was that the Burgess family was to receive the land between their eastern property and the old road. No other plausible explanation for the 1927 conveyance of a pinched half[-]mile tract appears in the current record. Perhaps there is one, though.
 

 Burgess I,
 
 840 So.2d at 767-69 (¶¶21, 22, 30).
 

 ¶ 23. This Court may have suggested some possible conclusions; however, these suggestions should not be interpreted as usurping the role of the fact-finder. Further, we find that the only directives this Court gave to the chancellor were as follows:
 

 We reverse and remand for reconsideration of the 140-yard strip because it has not yet been definitely located. We also reverse and remand the determination of the ownership of parcel 2 on our exhibit, which is the land between the old road and the eastern 2.5 acres of the NW 1/4 of SW 1/4, for reconsideration in light of this opinion.
 

 Id.
 
 at 771(¶ 43). We find that the chancellor made findings as to these directives contained in
 
 Burgess I.
 
 Therefore, this issue has no merit.
 

 II. Did the chancellor commit manifest error in determining the ownership of parcel two by analyzing a mutual mistake in the deeds instead of a mutual mistake by the parties as to the location of the boundary lines ?
 

 ¶ 24. In
 
 Burgess I,
 
 the Court found that the ownership of parcel two should be determined in order to understand the intention of the parties to the 1941 deed conveying the ambiguous 140-
 
 *1116
 
 yard strip of land to the Burgesses, stating:
 

 Obviously, the confusion about the 140-yard tract is significantly affected by the uncertainties of whether the parties believed at the time of the 1941 deed that the Burgesses owned all property east of the old road. What land the Burgess-es needed to be conveyed as a result of the movement of the road depends on what land they already owned.
 

 Burgess I,
 
 840 So.2d at 766(¶ 13).
 

 ¶ 25. The Burgesses do not dispute that Trotter holds record title to parcel two because the 1911 deed, and the subsequent 1927 deed conveying the same property, are unambiguous. Instead, they argue that the parties to the 1911 deed erroneously, and by mutual mistake, believed that the property conveyed in the 1911 deed included parcel two thereby bringing the western boundary line of the Burgess-es’ property over to the old Bolton-Brownsville Road. Again, it is clear that the legal description of the land conveyed did not include parcel two. The Burgesses merely claim equitable title to parcel two because the parties to the deed mistakenly believed parcel two to be included in the described land. They further argue that because the parties to the 1941 deed believed parcel two belonged to the Burgess-es, the 140-yard strip is located at parcel three — the area between the old Bolton-Brownsville Road and the new Bolton-Brownsville Road. Thus, they claim that because parcel two is the Burgesses’ property, parcel three comports with the language of the 1941 deed — it lies between the old and new Bolton-Brownsville Roads and connects with the Burgesses’ property.
 

 ¶ 26. The Burgesses claim that the chancellor erred on remand because she analyzed whether there was a mutual mistake in the
 
 deeds
 
 instead of whether there was a mutual mistake as to the
 
 location of the boundary lines.
 
 The Burgesses state in their brief: “Nowhere in the COA opinion was there an indication that the
 
 deed descriptions
 
 were faulty and needed reformation.” The Burgesses argue that there is a difference between a mutual mistake regarding the location of a boundary line and a mutual mistake in a deed description because only the mutual mistake in the deed description requires reformation.
 

 ¶ 27. Trotter counters by arguing that the Burgesses are trying to avoid the burden of proof for a reformation of a deed, which is proof beyond a reasonable doubt.
 
 Frierson v. Sheppard,
 
 201 Miss. 603, 606-07, 29 So.2d 726, 727 (1947). Trotter asserts that the Burgesses’ testimony and evidence does not even come close to meeting this burden. Trotter further argues that “for purposes of record title, the alleged distinction between a mistake in the deed and a mistake in the location of property is merely semantics.”
 

 ¶ 28. As the Burgesses argue, upon remand, the chancellor was instructed to make findings related to possible mutual mistake as to the boundary locations — not mistakes contained in the deed language. This Court stated:
 

 The chancellor’s findings did not address the matter of a potential mutual mistake at the time of the old deeds about the location of the east line of the quarter-quarter section. Neither is there discussion of what is fairly credible evidence that there were long-time fences. Instead, by relying on the survey platting of the deed descriptions, she found that Trotter owned everything except the east 2.5 acres in the disputed property, and the 140-yard strip.
 

 Burgess I,
 
 840 So.2d at 769(¶ 29). This Court further stated that “[t]he relief of reformation is not needed in order to use the concept of mistake when interpreting
 
 *1117
 
 what [the 1941] deed was intended to accomplish.”
 
 Id.
 
 at 770(¶ 31).
 

 ¶ 29. Thus, we do not agree with Trotter’s argument that the difference between a mutual mistake as to the deed language and a mutual mistake as to the parties’ property boundaries is a matter of mere semantics. At times, the chancellor’s judgment on remand seems to confuse the issue of this distinction by stating:
 

 ... the Court of Appeals concluded that a factual finding was required on whether there existed mutual mistake
 
 in the deed description
 
 with respect to the location of the boundary of the old road bed.
 

 [[Image here]]
 

 In its opinion, the Court of Appeals ruled that in order to determine the location of the 140[-]yard strip a factual finding was required on whether there existed “mutual mistake”
 
 in the deed description
 
 with respect to the location of the 1927[d]eed boundary.
 

 [[Image here]]
 

 The Court [of Appeals] acknowledged that it is the chancellor’s decision to determine whether the presence of the physical fences and substantial circumstantial evidence submitted by [the] Burgesses[] proved that [there] was a mutual mistake
 
 in the deed.
 

 (Emphasis added).
 

 ¶30. However, despite this somewhat confusing language, we find that the chancellor did make findings of fact as to the potential mutual mistake of the parties as to the location of the Burgesses’ property boundary. The chancellor heard testimony from competing expert witnesses. Boackle, the Burgesses’ expert, testified that parties to the 1927 deed and their subsequent grantees were mistaken as to the location of the property line because they did not use professional surveyors; thus, the parties intended that the deed extend the Burgesses’ property over to the old road.
 

 ¶ 31. Conversely, Bondurant, Trotter’s expert, opined that there was no mutual mistake between the parties to the 1927 deed. He testified that the deed descriptions were clear and that there was no evidence of any other intentions of the parties to the 1927 deed as to the location of the property conveyed in the deed. He found that there was insufficient evidence to show mutual mistake beyond a reasonable doubt.
 

 ¶ 32. The Burgesses are incorrect in stating that
 
 Burgess I
 
 never called for reformation of the deeds. While this Court did state,
 
 as to the 1%1 deed,
 
 “[t]he relief of reformation is not needed in order to use the concept of mistake,” the opinion went on to state that, because it was unclear as to whether the Burgesses’ property was contiguous to the old road, the case was remanded “so that the credibility and weight of the evidence about mistake can be determined.”
 
 Burgess I,
 
 840 So.2d at 770(¶¶ 31-32). This Court then stated:
 

 As to the principle of reformation, we note that a deed description that arises from a mutual mistake of the parties may be corrected. That a mistake existed must be proved beyond a reasonable doubt.
 
 McCoy v. McCoy,
 
 611 So.2d 957, 961 (Miss.1992). There was substantial circumstantial evidence and also physical fences. Whether these proved a mutual mistake was for the chancellor to decide.
 
 If so, then a deed may be corrected to reflect what the parties intended, at the time.
 

 Id.
 
 at (¶ 33) (emphasis added). Thus, it is clear that this Court was instructing the chancellor to weigh any evidence of mutual mistake in order that the 1911 and 1927 deeds could be reformed if, in fact, the parties were mistaken and believed that
 
 *1118
 
 the deeds brought the Burgesses’ property-all the way west to the old Bolton-Brownsville Road.
 

 ¶33. We find that the chancellor addressed the issue of mutual mistake on remand. She heard conflicting expert testimony presented by each party. It was within her discretion to find that, on remand, the Burgesses failed to prove mutual mistake beyond a reasonable doubt. Therefore, this issue is without merit.
 

 III. Did the chancellor commit manifest envr by locating the 1jO-yard strip in the same location as she did prior to the first appeal?
 

 ¶ 34. The Burgesses argue that the chancellor erred on remand by finding that the 140-yard strip described in the 1941 deed was located in the same place as stated in her initial opinion. They argue that in
 
 Burgess I,
 
 this Court specifically rejected this finding and instructed the chancellor to place this property in another location. They cite to
 
 Burgess I,
 
 stating:
 

 Ignoring the 140 yards of undirected distance, the language suggests that the entire property is between the old and new locations of the road, and that by lying there, it also borders the Burgess property. Without giving too much weight to the almost weightless, we conclude that the most natural reading of the deed language itself is consistent with the Burgess view that their family property historically bordered the old road.
 

 Burgess I,
 
 840 So.2d at 767-68(¶ 21).
 

 ¶ 35. The Burgesses again take this Court’s previous opinion out of context. In the section of the opinion that they quote, this Court was attempting to analyze the natural language of the deed. The natural reading of the deed was then construed with each party’s explanation because it was impossible to harmonize the monuments, quantities, and distances listed in the ambiguous deed description. This Court further explained:
 

 As to the 140[-]yard strip, the chancellor concluded that the strip of land could not just be between the two roads but had to go farther east to join the property then owned by A.L. Burgess. According to the language of the deed, the strip was between the roads but also had to join the property then owned by A.L. Burgess.
 
 Since there ivas no consideration of the principle of a mistaken and comctable descri.pti.on in the deeds, the possibility that the A.L. Burgess property did actually join the old road was not analyzed.
 
 In fact, we find that a quite credible interpretation of all the evidence, especially the conveyance in 1927 of a total of 5 acres, half in the for-tyHacre tract involved in this suit and the other half to the south, was that the Burgess family was to receive the land between their eastern property and the old road. No other plausible explanation for the 1927 conveyance of a pinched half[-]mile tract appears in the current record.
 
 Perhaps there is one, though.
 

 Id.
 
 at 769(¶ 30) (emphasis added).
 

 ¶ 36. In
 
 Burgess I,
 
 this Court attempted to clarify the issues for the chancellor. However, no portion of the chancellor’s prior order was reversed and rendered. Instead, the case was remanded for further fact-finding by the chancellor because this Court opined that there were potential explanations for the conveyances in 1927 and 1941 other than those described in
 
 Burgess I.
 
 Furthermore, the case was remanded so the chancellor could make a definite description for the 140-yard strip. There was no mandate that the chancellor should situate the 140-yard strip in a different location. Accordingly, this issue has no merit.
 

 
 *1119
 

 TV. Did the chancellor commit manifest error in her use of monuments of title?
 

 ¶ 37. The Burgesses believe that the chancellor erred in her analysis of the 1941 deed because she misused the language in the 1941 deed. They argue that she used “the land now owned by said A.L. Burgess,” as a monument of title. They assert that a monument of title cannot be a piece of land; therefore, the chancellor committed manifest error in her analysis.
 

 ¶ 38. The fact that the chancellor referred to “the land now owned by said A.L. Burgess” as a monument is at best a mistake of form and not of substance because our case law allows chancellors to use certain and dependable descriptive items in a deed to construe the deed as a whole. One of our rules of deed construction states:
 

 those parts which are the more certain and dependable as descriptive items will interpret those items which are the less certain and dependable, and, when it is necessary in order to satisfy and harmonize all items, the more certain will, if reasonably possible, draw to themselves those that are the less certain....
 

 S. & S. Dragline Serv., Inc. v. Baker,
 
 400 So.2d 930, 933 (Miss.1981) (citation omitted). Furthermore, our supreme court has stated that “[a] deed .... may constitute a sufficient description of the land conveyed to state that it is bounded by or adjoining lands belonging to named persons.”
 
 Humes v. Krauss,
 
 221 Miss. 301, 317, 72 So.2d 737, 742 (1954) (quoting Thompson on Real Property, Vol. 6, pp. 473-74). Thus, we find that, although the chancellor referred to A.L. Burgess’s land as a monument, she did not err because adjacent land, like a monument, can be used to give meaning to an ambiguous deed description. The chancellor found that the western border of the land owned by A.L. Burgess in 1941 was the western edge of parcel one on our map; therefore, she did not err in using this boundary line to add meaning to the 1941 deed. Accordingly, this issue has no merit.
 

 V. Did the chancellor commit manifest error by relying on Trotter’s testimony because it was barred by collateral estoppel?
 

 ¶ 39. The Burgesses argue that the chancellor erred by relying on the testimony of Trotter because it had been substantially impeached and was barred by collateral estoppel. Specifically, the Bur-gesses assert that the chancellor relied on Trotter’s testimony that certain fences mentioned during the Burgesses’ case never existed. Furthermore, the Burgesses argue that the issue of the location of the fences and the western boundary line of their property had already been litigated. In an unrelated case involving Allen E. Davis, Wilburn Burgess, Bobbie D. Burgess, and Trotter, the chancellor found: “The evidence established that Alex Trotter tore down and removed the existing fence which was maintained by the Davis’ [sic] predecessor in interest as the boundary line between the Burgess and Trotter [p]roperty.” Therefore, they argue that the concept of collateral estoppel applies.
 

 ¶ 40. The Burgesses did not properly preserve the issue of collateral estoppel for appeal. The Burgesses did not object to Trotter’s testimony during trial as being barred under a theory of collateral estop-pel or move for summary judgment under the theory of collateral estoppel. “[W]e need not consider matters raised for the first time on appeal, which [in] practice would have the practical effect of depriving the trial court of the opportunity to first rule on the issue, so that we can then review such trial court ruling under the appropriate standard of review.”
 
 Alexan
 
 
 *1120
 

 der v. Daniel,
 
 904 So.2d 172, 183(¶ 26) (Miss.2005). Therefore, we find that this issue is procedurally barred.
 

 ¶41. Procedural bar aside, we do not believe that the Burgesses’ argument has merit. The supreme court has stated that “collateral estoppel is applicable, and the parties to an action will be precluded from relitigating a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action.”
 
 In re Estate of Stutts v. Stutts,
 
 529 So.2d 177, 179 (Miss.1988). We do not have the necessary information in the record required to apply collateral estoppel. We cannot tell: (1) whether the fences relevant to this appeal are the same fences discussed in the order, (2) whether the land in this case is the same land involved in the order,
 
 [6]
 
 (3) whether this order involved the same specific issues involved in this case, (4) whether this order determined any of the same issues that were involved in this case, and (5) whether these issues were essential to the former order if they were the same issues as in this case. Because the Burgesses have failed to properly plead collateral estoppel, we find that this issue has no merit.
 

 VI. Did the chancellor abuse her discretion in her consideration of the existence or non-existence of alleged fences?
 

 ¶ 42. At the trial on remand, Joan Vick-ers Garret, the Burgesses’ real estate agent, testified that she saw a cross-fence when she walked the Burgesses’ property. She said that she believed that this fence separated the Burgesses’ property from Trotter’s property and that it ran from the old Bolton-Brownsville Road to the new Bolton-Brownsville Road. She also testified that after the attempted sale of the land she saw bulldozers pushing down fences on the disputed property. W.C. Alderman, the surveyor who conducted the Burgesses’ surveys, stated that during his first survey in 1997 he used various fences and iron corner pins to orientate himself while he was surveying. He testified that during his second survey these pins and fences were destroyed, and a new fence had been erected.
 

 ¶ 43. The Burgesses’ final argument is that the chancellor abused her discretion by ignoring evidence that there was a boundary-line fence along the eastern side of the old road, which Trotter had destroyed after the 1997 survey. Furthermore, they say that the only evidence that this fence did not exist was the substantially impeached testimony of Trotter, to which they believe the chancellor gave great weight.
 

 ¶ 44. However, we fail to find evidence of the chancellor’s reliance on Trotter’s testimony regarding the fences. The chancellor stated:
 

 In support of their claim for “mutual mistake,” the Burgesses reference their alleged uncontested possession of the disputed property. The Burgesses assert that fences delineating Parcel 2 and the uncontested peaceful possession of Parcel 2 for over 50 years by the Bur-gesses is proof beyond a reasonable doubt that Parcel 2 belongs to the Burgess family. Even if possession evidence were relevant evidence for a cause of action for mutual mistake, the claims of adverse possession have already been
 
 *1121
 
 litigated by this Court [and the Mississippi Court of Appeals].
 

 In the pretrial order, the Burgesses agreed that the 1927 deed was unambiguous on its face. Therefore, the chancellor found that the parties could not be “operating under mutual mistake.” She did not consider the fences as evidence of possession, as the Burgesses’ claims of adverse possession had already been fully litigated.
 

 ¶ 45. The chancellor did not ignore the Burgesses’ evidence regarding fences. In her order, she acknowledged the evidence regarding the fences. She, however, chose to place little weight on this evidence and relied on the unambiguous 1927 deed instead. The supreme court, in analyzing a case similar to this one, stated:
 

 If the appellants were unable to provide sufficient evidence of the [parties’] intent regarding the division of the [property], the trial court was left only to consider whether the deeds in question were ambiguous enough to mask what could have been the real intent of the parties and therefore eligible for reformation. Yet, ... the appellants do not allege any of the deeds in question contain ambiguous language. As such, the trial court was precluded from reforming the deeds on the ground that the deeds suffered from ambiguous language.... Simply put, the appellants failed to prove to the satisfaction of the chancellor beyond a reasonable doubt that the deeds in question were a product of mutual mistake reformation. We cannot conclude the trial court’s findings of fact were manifestly wrong.
 

 McCoy v. McCoy,
 
 611 So.2d 957, 961 (Miss.1992) (internal citations omitted). Like the
 
 McCoy
 
 court, we cannot find that the chancellor’s findings of fact were manifestly wrong. Therefore, we find that this issue has no merit.
 

 ¶ 46. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 
 *1122
 
 [[Image here]]
 

 [1]
 

 . In this Court's previous opinion, a plat was attached for clarification.
 
 Burgess I,
 
 840 So.2d at 773. We will use that same plat for additional clarity in this opinion. Furthermore, we recognize that none of the deeds in this case contain a reference to "parcel two.” Instead, this was a creation of the courts to simplify the issues in this case. Parcel two is in fact the land between the old Bolton-Brownsville Road and parcel one (the eastern 2.5 acres of the NW 1/4 of the SW 1/4 of Section 20, Township 7 North, Range 2 West, Second Judicial District, Hinds County, Mississippi). The parties stipulated that the Bur-gesses own parcel one.
 

 [2]
 

 . The 1927 deed to A.L. Burgess actually described the land as the E 1/2 of the SW 1/4 and five acres off the east side of the W 1/2 of the
 
 SE
 
 1/4. However, the chancery court previously determined that this description erroneously conveyed five acres off the east side of the W 1/2 of the SE 1/4, and the chancellor determined that this deed, like the 1911 deed, actually conveyed five acres off the east side of the W 1/2 of the SW 1/4.
 

 [3]
 

 . In this Court's previous opinion, the Court was under the belief that the road was moved in 1939.
 
 Burgess I,
 
 840 So.2d at 765(¶ 6).
 

 [4]
 

 . In the prior appeal, this Court also upheld the chancellor’s determination that the Bur-gesses had not adversely possessed the property because neither party had proven exclusive use.
 
 Burgess I,
 
 840 So.2d at 770-71 (¶¶ 35-36). Thus, adverse possession is not an issue in this appeal.
 

 [5]
 

 . Commencing at a found 5/8" rebar accepted as the NW corner of the SW/4 of Section 20, Township 7 North, Range 2 West, Hinds County, Mississippi and run thence S89°57T0" E for a distance of 1026.69 feet to a set 1/2" iron pin on the northeasterly right-of-way line of Bolton-Brownsville Road, as now laid out and in use and the Point of Beginning of the herein described parcel; from said Point of Beginning run thence S89°56'31" E leaving said right-of-way for a distance of 222.61 feet to set 1/2" iron pin; run thence S00°01'04" for a distance of 239.13 feet to a set 1/2" iron pin; run thence West for a distance of 156.77 feet to a set 1/2" iron pin on the aforementioned northeasterly right-of-way line of Bolton-Brownsville Road; Run thence along said right-of-way lien with the arc of a curve to the left for a distance of 250.02 feet having a radius of 602.95 feet and a chord bearing and distance of N15°21'45" W 248.23 feet to the Point of Beginning, containing 1.00 acre, more or less.
 

 [6]
 

 . During cross-examination, Trotter's attorney continuously objected to the Burgesses’ questioning of Trotter because he said the previous litigation involved a different tract of land, which was south of the land at issue in this case.